**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| Holy Trinity Ukrainian Catholic Church,<br><br>*Plaintiff,*<br><br>v.<br><br>Collier Township, Gabe Benvenuti, Wayne Chiurazzi, Tim Downey, Jr., Julie Murphy, Kari Suter, Dawnlee Vaughn, Mary Ann Cupples-Wisniowski,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:26-cv-00024 |

---

**PLAINTIFF HOLY TRINITY UKRAINIAN CATHOLIC CHURCH'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiff Holy Trinity Ukrainian Catholic Church, by its undersigned attorneys at Troutman Pepper Locke LLP, Independence Law Center, and First Liberty Institute, submit this Memorandum of Law in Support of its Motion for Preliminary Injunction against Defendants Collier Township, Gabe Benvenuti, Wayne Chiurazzi, Tim Downey, Jr., Julie Murphy, Kari Suter, Dawnlee Vaughn, and Mary Ann Cupples-Wisniowski.

## STATEMENT OF THE CASE

Holy Trinity Ukrainian Catholic Church (the "Church") is part of a small branch of the worldwide Catholic Church. Ukrainian Catholics suffered decades of persecution under Soviet communism, driving faithful members to flee to the United States in search of religious freedom. Some of those members joined a small parish

in the Pittsburgh area, becoming the Church. After decades of slow growth, the Church sought to build a chapel and related facilities on its own property in service of its religious mission. Leveraging facially unconstitutional zoning regulations and a land use authorization bureaucracy, Collier Township (the "Township") first categorically precluded the Church, as a place of religious worship, from building on its own property as of right—although other non-religious uses are given that privilege—and then imposed substantial burdens and illegal restrictions to kill the Church's vision. In round one, the Township outright denied the Church's original plans. Then, when the Church attempted to pursue significantly scaled-down plans, the Township threw up more hurdles and ultimately granted an "approval" that sought to micromanage the Church's religious practices, to the point of purporting to specify how long it may ring bells in its services (three-and-a-half minutes, to be exact) and ostensibly prohibiting the Church from memorializing anyone who died more than six months ago in its cemetery (before June 9, 2025, to be exact). To enjoin the Township's egregious and unconstitutional restrictions of the Church's religious exercise, the Church seeks a preliminary injunction.

## LEGAL STANDARD

A court may issue preliminary injunctive relief on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Specifically, a court may grant a preliminary injunction to enjoin enforcement of municipal ordinances that violate the Religious Land Use and Institutionalized Persons Act ("RLUIPA") or otherwise discriminate against religion. *See Hope Rising Cmty. Church v. Mun. of Penn Hills*, 2015 WL 7720380 (W.D. Pa. Oct. 28, 2015), *report and recommendation adopted*, 2015 WL 7721252 (W.D. Pa. Nov.

30, 2015); *ReMed Recovery Care Ctrs. v. Twp. of Willistown*, 36 F. Supp. 2d 676, 688 (E.D. Pa. 1999) ("The public interest in the protection and enforcement of civil rights and anti-discrimination laws generally weighs in favor of granting injunctive relief against violations."). And to address these types of violations, a "court of equity has traditionally had the power to fashion any remedy deemed necessary and appropriate to do justice in the particular case." *United States v. Price*, 688 F.2d 204, 211 (3d Cir. 1982).

To warrant a preliminary injunction, a party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *SEC v. Chappell*, 107 F.4th 114, 126 (3d Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

## FACTUAL BACKGROUND

Through its RLUIPA and Free Exercise claims, the Church seeks injunctive relief to restrain the harm caused by the Township's facially unconstitutional zoning ordinances and the Township's illegal application of those zoning ordinances to kill two separate proposed construction projects on the Church's property (the "Property").[1]

The Township's zoning ordinances illegally restrict the existence and operation of churches in the Township. Specifically, and as set forth in the Church's Verified

[1] In support of its Motion and Memorandum of Law, the Church incorporates and references the facts and exhibits in its Verified Complaint.

Complaint ("Verified Compl."), the Township's zoning ordinances prohibit churches from operating anywhere except for 5 specific zones, and even within those zones, churches are required to obtain a conditional use approval from the Township to operate. Verified Compl., ¶ 58. In contrast, the Township permits large-scale commercial and other secular uses to exist as a matter of right within at least one zoning district, including the Planned Economic Development District ("PEDD") zone. *Id.*, ¶¶ 60-68. Despite allowing multiple secular uses as a matter of right within PEDD zones, the Township prohibits churches and other religious institutions from operating in PEDD zones at all. *Id.*, ¶ 69.

The Church first attempted to seek Township approval to build on its land in 2023. The Church sought to construct a shrine dedicated to the Holy Protection of the Mother of God in the architectural style of the Ukrainian Catholic Church (the "Shrine Project"). The Shrine Project included construction of a chapel, sanctuary, social hall, museum crypt, gift shop, and a small retreat center with 18 guest rooms. *Id.*, ¶¶ 75-76. After submitting its formal application, the Church participated in a near-yearlong process of meetings and hearings with the Township. *Id.*, ¶¶ 87-96. At no point in the process did the Township engage in any analysis resembling the RLUIPA-required test. *Id.*, ¶¶ 90-94. In contrast, the extent of the Township's analysis was the Planning Commission commenting that it was concerned with potential "economic hardship and inconveniences" to residents (which the Township failed to articulate or explain) and that the Church's concept was "fabulous," but the location was not right. *Id.,* Ex. A. After almost a year of meetings and hearings with

ever-changing concerns, the Township's Board of Commissioners voted to deny the Church's application. *Id.*, ¶ 96.

One year later, the Church made a second attempt to seek the Township's permission to build on its own land. This time the Church submitted a significantly scaled-down application that simply sought approval to use PEDD-zoned land for a cemetery and to build a chapel and mausoleum on that cemetery (the "Chapel Project"). *Id.*, ¶¶ 97-98. But again, wielding the power of its unlawful ordinances and its land use approval process, the Township rejected the Church's application. Instead of engaging in a RLUIPA analysis, the Township requested information but did not rely on it, ignored the Church's efforts to resolve purported concerns, derided the Church's faith in financing its project, and ultimately issued a formal letter with a list of arbitrary conditions for the project. *Id.*, ¶¶ 99-102; *id.,* Ex. B.

## ARGUMENT

### I. The Church Will Likely Prevail on the Merits of Its RLUIPA and Free Exercise Claims

#### A. RLUIPA Equal Terms Claim

RLUIPA's equal terms provision provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The Township's zoning ordinances violate the equal terms provision on its face. The Township does not allow churches to operate anywhere as of right, yet the Township permits comparable secular uses such as commercial schools, minor and major business and professional offices, health clubs, commercial

recreational uses, private recreational uses, public recreational uses, indoor entertainment venues, and restaurants to exist as a matter of right in at least one of the Township's zoning districts. *See* Twp. of Collier, Pa., Mun. Code § 27, Attach. 9.[2] Instead, a religious assembly must apply for a conditional use approval in select zoning districts. *Id.* The Township thus clearly treats religious assemblies on less than equal terms with nonreligious assemblies.

The Third Circuit has held that "if a land-use regulation treats religious assemblies or institutions on less than equal terms with nonreligious assemblies or institutions that are no less harmful to the governmental objectives in enacting the regulation, that regulation—without more—fails under RLUIPA." *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 269 (3d Cir. 2007). An equal terms claim "include[s] neither a substantial burden nor a strict scrutiny requirement." *Id.* at 270. Rather, an equal terms claim requires a plaintiff to show "a secular comparator that is similarly situated as to the regulatory purpose of the regulation in question." *Id.* at 264. Put differently, a plaintiff here must show: "(1) that it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance." *Id.* at 270. In *Lighthouse*, the Third Circuit examined the relevant city ordinance's objectives for a "Central Commercial District"

---

[2] Available at https://ecode360.com/attachment/315126/CO2581-027i%20Use%20Table.pdf.

and the uses allowed there. *Id.* at 272; *see also Tandon v. Newsom*, 593 U.S. 61, 62 (2021) ("[W]hether two activities are comparable . . . must be judged against the asserted government interest that justifies the regulation at issue."). The Third Circuit granted summary judgment for the religious institution because "it [was] not apparent from the allowed uses why a church would cause greater harm to regulatory objectives than" other allowed uses. *Lighthouse*, 510 F.3d at 272; *see also Tandon*, 593 U.S. at 62 ("Comparability is concerned with the risks various activities pose, not the reasons why people gather.").

As noted above, the Church's Property is made up of partially PEDD-zoned land, and the Church's proposed religious land uses and construction projects were to occur in a PEDD zone. Verified Compl., ¶¶ 35, 83, 98. The regulatory purpose of a PEDD zone is "to promote economic development on large undeveloped tracts in a campus-style atmosphere, allowing for a compatible mix of uses that encourages an integrated living and working environment while preserving adequate buffers between dissimilar uses." Twp. of Collier, Pa., Mun. Code § 27-1601. To that end, the Township allows amusement parks, ice rinks, fitness centers, and country clubs to operate as of right in PEDD zones. *See id.* § 27-1602.1. And like the Church's Property, the nearby Carpenters Complex is also in a PEDD zone. *Id.*, ¶ 53.

Turning now to the five-part *Lighthouse* test. First, the Church is a religious assembly or institution. *Id.*, ¶ 18. Second, the Church and its Property are subject to the Township's zoning ordinances, and the Township has exercised that authority to deny or curtail the Church's proposals. *Id.*, ¶ 34. Next, the Church must show that

the Township's ordinances treat the Church on less than equal terms with a nonreligious assembly or institution that causes no lesser harm to the interests the regulation seeks to advance.

To satisfy that element, the Court need only consider the neighboring Carpenters Complex, a sprawling 93,000-square-foot compound that is also in a PEDD zone. *Id.*, ¶ 53. Both the Church's Property and the Carpenters Complex are accessible only through Ridge Road. *Id.* And both the Church's proposed projects and the Carpenters Complex seek to establish campuses that are open to members and to the public for gatherings and learning opportunities. Put simply, both seek to advance the purposes of the PEDD zone.

Now, consider the differences. The Township blessed the Carpenter Complex's use and size. The Carpenters Complex is used near-daily for secular gatherings and for large events, like political rallies, *id.*, ¶¶ 52, 125, without being subjected to any of the crushing conditions imposed on the Church. In contrast, the Township imposed a variety of arbitrary conditions on the Church's proposals. *Id.*, ¶ 101; *id.*, Exs. B-C. Specifically, the Township shrank the size of the Church's proposed Chapel to 5,000 square feet (around 5% of the size of the nearby Carpenters Complex) and no more than thirty-five feet high. *Id.* The Township did not show, and will not be able to show, that allowing the Church to build its originally proposed Shrine Project would cause greater harm to the zoning ordinances, the purposes of PEDD zone, or the nearby community, than the Carpenters Complex or other businesses allowed to operate in PEDD zone.

Having established the first four elements of the *Lighthouse* test, the Church now turns to the final element: whether the religious assembly causes no lesser harm to the interests the Township seeks to advance. Looking broadly at the PEDD zone, the Township's stated purpose is "to promote economic development on large undeveloped tracts in a campus-style atmosphere, allowing for a compatible mix of uses that encourages an integrated living and working environment while preserving adequate buffers between dissimilar uses." Twp. of Collier, Pa., Mun. Code § 27-1601. The Church's Shrine Project and Chapel Project serve this purpose. The Shrine Project will "promote economic development," *id.*, because its construction and continued operation will create jobs, and it would attract Ukrainian Catholics and tourists alike. Verified Compl., ¶ 105. The establishment of a church campus, including memorials or cemeteries, is consistent with the Township's stated objective of establishing a "campus-style atmosphere" that allows a "mix of uses that encourages an integrated living and working environment." *See id.* Neither the Shrine Project nor the Chapel Project would be more harmful to the goals of the PEDD zone than ice rinks or health offices. *See Lighthouse*, 510 F.3d at 272 (holding that the city did not show "why a church would cause greater harm to regulatory objectives than an 'assembly hall' that could be used for unspecified meetings"); *Hope Rising*, 2015 WL 7720380, at *5 ("[T]he City has failed to show how a religious institution would cause greater harm to the Light Industrial District and its objectives than parks, playgrounds and educational institutions."). The Township can offer no credible argument to the contrary.

The Township imposed overbroad restrictions on religious assemblies by preventing them from operating anywhere as of right. It then imposed significant restrictions on the Church, including how long it may ring its bells and whom it may memorialize. The Township does all of this despite allowing the Carpenters Complex to operate and expand, and despite the Shrine Project serving the same goals. This unequal treatment violates RLUIPA's equal terms provision. The Church is likely to succeed on this claim.

**B. RLUIPA Substantial Burden Claim**

RLUIPA's substantial burden provision provides that a municipality may not "impose or implement a land use regulation in a manner that imposes a substantial-burden on the religious exercise of . . . a religious assembly or institution, unless the government demonstrates that" such imposition or implementation is both "(A) [ ] in furtherance of a compelling governmental interest; and (B) [ ] the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1); *see generally id.* § 2000cc-5(4) (defining "the government[s]" covered by RLUIPA to include a "municipality" and "official[s] of [such] an entity"). RLUIPA defines "religious exercise" to include "[t]he use . . . of real property for the purpose of religious exercise," *id.* § 2000cc-5(7)(B); and defines a covered "land use regulation" to include "a zoning . . . law, or the application of such a law, that limits or restricts a claimant's use . . . of land," *id.* § 2000cc-5(5). RLUIPA thus establishes a strict-scrutiny standard for a municipality's implementation of land use regulations (like a zoning ordinance) that substantially burden a religious institution's use of its real property for purposes of religious exercise. *See Zubik as Tr., Roman Cath. Diocese of Pittsburgh v. City of*

*Pittsburgh*, 2025 WL 461533, at *19 (W.D. Pa. Feb. 11, 2025) ("The test for a RLUIPA violation is not whether a land use regulation has substantially burdened a compulsory tenet of a person's faith (whether sturdy or fragile) but whether the land use regulation substantially burdens a person's use of property for religious exercise.").

This case falls squarely within the scope of RLUIPA's substantial burden provision. The Township and its Commissioners fall under RLUIPA's definition of "government." 42 U.S.C. § 2000cc-5(4). The Township's zoning ordinances are "land use regulation[s]" within RLUIPA, as they are "zoning . . . law[s]" that "limit[] or restrict[]" how the Church may "use or develop[]" its "land." *Id.* § 2000cc-5(5). As an Eastern Catholic Christian Church, the Church is a "religious assembly or institution" protected by RLUIPA. *Id.* § 2000cc(a)(1). The Church's proposed plans to build (at different times, after facing the Township's roadblocks) a cultural center, a shrine, and a chapel on its land constitute protected "religious exercise" under RLUIPA, *id.* § 2000cc(a)(1), as it involves the "use" of the Church's "real property for the purpose of religious exercise," *id.* § 2000cc-5(7)(B). Further, the Township's conditional use approval process plainly permits the Township "to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C). The substantial burden provision therefore applies to the Township's ordinances and the application of those ordinances to the Church.

Here, the Church is likely to succeed on the merits of its claim that the Township's conduct during the application approval process and the Township's final

conditions violate RLUIPA's substantial burden provision. Defining a "substantial burden," the Western District of Pennsylvania explained:

> [T]he best reading of the term "substantial burden," particularly in relation to a governmental imposition on the use of real property . . . is something that significantly or considerably hinders, restricts, impairs, or encumbers the use (or building or conversion) of such property for the purpose of religious exercise.

*Zubik*, 2025 WL 461533, at *17. The *Zubik* court went on to hold that a municipality substantially burdened a religious institution's use of its property by precluding it from "demolishing or making any exterior alterations" to its own property. *Id.* at *18.

Under this definition, the Township has substantially burdened the Church in at least two ways. First, the Township's zoning ordinances deny the Church (or any religious assembly) from opening and operating a religious structure anywhere in the Township as of right. *See* Twp. of Collier, Pa., Mun. Code § 27, Attach. 9. While the Western District of Pennsylvania has not yet analyzed this complete denial of existence as a matter of right in the substantial burden context, the Ninth Circuit's analysis in *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter* is instructive. 456 F.3d 978 (9th Cir. 2006). There, the court found a county's denial of two conditional uses whose "net effect" was "to shrink the large amount of land theoretically available to [the organization] under the Zoning Code to several scattered parcels" on which a conditional use may or may not be approved imposed a substantial burden. *Id.* at 991-92. Here, the Township's zoning ordinances are just as, if not more, restrictive by denying any religious assembly to operate as of right in *any* zoning district. Further, the Township's conditional use approval process imposes significant "delay,

uncertainty, and expense," a factor other courts have held weigh in favor of finding a substantial burden. *See Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007). The Church has engaged in an unproductive process with the Township for years, facing derision and delay along the way. *See, e.g.*, Verified Compl., ¶¶ 95, 100-04. The combination of a restriction so overbroad and a municipality so obstructive compels a finding of the existence of a substantial burden here.

Next, the Township's denial of the Shrine Project and arbitrary restrictions in its "approval" of the Chapel Project significantly "restrict[]" the use of the Church's "property for the purpose of religious exercise." 42 U.S.C. § 2000cc(a)(1). The Township's denial of the Shrine Project deprived the Church the opportunity to build a shrine to serve its members and Ukrainian Catholic pilgrims. And the Township's conditions on the Chapel Project forbid Church members from doing anything inside the shrunken Chapel besides participate in memorial services (and, even then, the Township prohibits them from memorializing anyone who died before June 9, 2025). *Id.* ¶ 101; *id.*, Ex. B. Furthermore, the Township's conditions reserved a purported "right to audit usage," presumably to assess, for example, whether the Church exceeded its 3.5-minute bell-ringing allotment. *Id.* The Township has "effectively supplanted the [Church's] control" over the use of the Church Property. *Zubik*, 2025 WL 461533, at *18. The conditions thus "impose[] a significant and material encumbrance upon the [Church's] use of its property for the purpose of religious exercise such that it imposes a 'substantial burden'" in violation of RLUIPA. *Id.*

Having established that the Township has imposed substantial burdens on the Church's religious exercise, RLUIPA shifts the burden to the Township to show how its conduct satisfies strict scrutiny—"the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 509 (1997); *see* 42 U.S.C. § 2000cc(a)(1); *Zubik*, 2025 WL 461533, at *19. The Township cannot meet this burden.

The Township must first establish that its actions serve a compelling governmental interest. 42 U.S.C. § 2000cc(a)(1). At no point in this arduous process did the Township identify exactly what interest it sought to advance. To the extent the Township invokes a road safety rationale, the only study performed concluded that the effects of the Shrine Project would be minimal. Verified Compl., ¶ 120; *see id.*, Ex. A. Even more, the Church offered to pay for any road infrastructure improvements desired. *Id.*, ¶ 92. Further, the Township has allowed the construction of over 200 homes nearby and the continued expansion of the Carpenters Complex, the latter being also accessible only through Ridge Road. *Id.*, ¶¶ 45-54. Congress passed RLUIPA in response to municipalities using "vague and universally applicable reasons as traffic" to discriminate against churches. *See* 146 Cong. Rec. S7774 (daily ed. July 27, 2000); *see also Zubik*, 2025 WL 461533, at *20 (quoting *WR Prop. LLC v. Twp. of Jackson*, 2021 WL 1790642, at *12 (D.N.J. May 5, 2021) ("Given this high bar, courts have held that 'aesthetics,' traffic, and 'community character' are normally not compelling interests.")). In any event, there is no reason to think that the same concerns are not implicated by the neighboring Carpenters Complex, so the Township's failure to pursue its purported interests "with respect to analogous

nonreligious conduct" is "fatally underinclusive." *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 486 (2020); *see also Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546-47 (1993) ("Where government restricts only conduct protected by the First Amendment and fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort, the interest given in justification of the restriction is not compelling."). The Township fails to meet its burden at the first step.

Without a specifically identified compelling governmental interest, there is no way to even determine whether the Township's conditions were the least restrictive means. *See* 42 U.S.C. § 2000cc(a)(1)(A)-(B). Regarding the Shrine Project, the Township's outright denial of the Church's request was far from the least restrictive means. *See Harbor Missionary Church Corp. v. City of San Buenaventura*, 642 F. App'x 726, 730 (9th Cir. 2016) (reversing the denial of a preliminary injunction when the district court failed to determine why a conditional use "would not sufficiently protect" the city's interests if it included conditions preventing "negative effects" about which the city was concerned). As to the Chapel Project, the Township's conditions were arbitrary, untethered from RLUIPA's rubric and without other explanation. *See* Verified Compl., Exs. B-C. Without explanation or justification, the conditions prevent the Church from holding a memorial service before an arbitrary date, prevent bell-ringing beyond an arbitrary duration, and prohibit bell-ringing outside a narrow and arbitrary set of services. *Id.* These arbitrary and highly restrictive conditions represent the exact kind of municipal overreach that RLUIPA

proscribes. As the Supreme Court has repeatedly held, "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton v. City of Phila.*, 593 U.S. 522, 541 (2021); *see also Mast v. Fillmore Cnty.*, 141 S. Ct. 2430 (2021) (granting, vacating, and remanding a substantial burden RLUIPA petition "for further consideration in light of" *Fulton*). No evidence suggests the Township gave a thought to its simple obligations under RLUIPA before substantially burdening the Church's religious exercise for either of its proposed projects. And the Township's overbroad prohibition on churches operating as of right in the Township is the exact kind of religious discrimination that motivated Congress to pass RLUIPA. The Church is likely to succeed on this claim.

### C. Free Exercise Claim

For many of the same reasons the Church is likely to succeed on its RLUIPA claims, it is also likely to succeed on its Free Exercise claim. In general, the elements of a Free Exercise claim are similar to those of an RLUIPA substantial burden claim. Strict scrutiny applies when the defendants (1) burdened the plaintiff's religious exercise (2) pursuant to a policy that is not neutral or generally applicable. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). Significantly, the Church need only show that its sincere religious practice has been burdened, rather than *substantially* burdened. *See id.*; *see also Kravitz v. Purcell*, 87 F.4th 111, 124 (2d Cir. 2023) ("When we are considering government policies that are not neutral and generally applicable . . . there is no justification for requiring a plaintiff to make a threshold showing of substantial burden."). For the reasons described in the previous section, the Township burdened the Church's religious exercise.

The Township also imposed that burden pursuant to a regulatory scheme that is neither neutral nor generally applicable. "[G]overnment regulations are not neutral and generally applicable . . . whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 593 U.S. at 62 (emphasis in original). As discussed above, the Township's ordinances (both facially and as applied to the Church) treat the Church's religious land use less favorably than other comparable secular uses like amusement parks, ice rinks, fitness centers, country clubs, and the Carpenters Complex. Additionally, a law is not generally applicable if it "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exceptions." *Fulton*, 593 U.S. at 533 (citation modified). This is exactly what the Township's conditional use approval process entails, as it requires individualized examination of a property owner's proposed use. Thus, the Township's actions are neither neutral nor generally applicable. And for the same reasons the Township cannot satisfy strict scrutiny under RLUIPA, it cannot meet this exacting standard. The Church is therefore likely to succeed on its Free Exercise claim.

## II. The Church Will Suffer Irreparable Injury From the Loss of Its Freedom to Exercise Its Religion

The Township's application of zoning ordinances and restrictions has imposed unlawful burdens on the Church and treated the Church on unequal terms from nonreligious institutions. Because of the Township's rejections and restrictions, the Church has been denied the right to use its property for specific worship that is central to the expression of its faith and the expression of the Church's religious

heritage. Verified Compl., ¶¶ 22-27 (explaining the importance of bell-ringing, commemoration of the dead, and "Kyivan" architectural style). These traditions are key aspects of the Church's religious exercise, and "[i]t is not for the courts to determine whether an aspect of religious exercise is basic or central to a particular faith." *Zubik*, 2025 WL 461533, at *19.

The Supreme Court has made clear "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). And the Courts of Appeals have explained that RLUIPA serves to protect First Amendment freedoms. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) ("This principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise."); *Reed v. Bryant*, 719 F. App'x 771, 780 (10th Cir. 2017) ("RLUIPA enforces the First Amendment right to exercise one's religion . . . .").

Here, the Church has suffered the loss of First Amendment freedoms for approximately *two years*. The Church spent significant time and resources seeking approval to construct a chapel and other religious buildings on its own property. Beginning in 2023, the Church developed a plan and sought approval to use its property for its own religious purposes. Verified Compl., ¶¶ 75-80. But two years later and to this day, all the Church is permitted to build on its property is a "chapel/mausoleum" that must be "less than or equal to 5000 square feet" and "not

greater than 35 feet to the highest point." *Id.*, ¶ 101; *id.*, Ex. B. Through rejections, restrictions, and bureaucratic processes, the Township has controlled the Church's use of its own property in violation of RLUIPA. Unless the Court intervenes, the Township will continue to prevent the Church from exercising its First Amendment freedoms. An injunction is necessary as monetary damages cannot compensate the Church for the Township seizing control over how the Church uses its property. *See Trs. of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, 527 F. Supp. 3d 722, 774 (E.D. Pa. 2021).

## III. The Township Will Suffer No Harm as a Result of the Preliminary Injunction

The harm from refusing this injunction exceeds any potential harm to the Township from granting the injunction because the Township will not suffer *any* harm as a result of the injunction. The Third Circuit has stated that courts should balance the parties' relative harms by evaluating "the potential injury to the plaintiffs without this injunction versus the potential injury to the defendant with it in place." *SEC v. Chappell*, 107 F.4th 114, 138 (3d Cir. 2024) (citing *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017)). Courts should also consider "the possibility of harm to other interested persons from the grant or denial of the injunction." *Id.* (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017)).

The Court must identify the harm to be caused by the injunction against the possibility of harm if it is not issued to determine which way the balance of hardships tips. *B.L. by Levy v. Mahanoy Area Sch. Dist.*, 289 F. Supp. 3d 607, 615 (M.D. Pa.

2017) (citing *Buck v. Stankovic*, 485 F.Supp.2d 576 (M.D. Pa. 2007)); *see also Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 178 (3d Cir. 2002).

Enjoining the Township's enforcement of zoning ordinances in a way that (a) restricts the Church's ability to build a church building without a conditional use approval and (b) imposes significant conditions, such as limiting bell-ringing, memorial services, and other Church functions, will not cause the Township any harm. Verified Compl., ¶¶ 96, 101-09. The Township permits a wide range of secular property uses to exist as a matter of right in one or more of its zoning districts, while prohibiting religious institutions from operating in PEDD-zoned land. *Id.*, ¶¶ 57-74. The Township cannot show any cognizable harm from the Church building structures and engaging in activities that many secular organizations already build and engage in. Further, the Township "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Anchor Stone Christian Church v. City of Santa Ana*, 777 F. Supp. 3d 1126, 1155 (C.D. Cal. 2025) (quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)).

On the other hand, the harm suffered by the Church as a result of the application of the zoning ordinances to deny the Shrine Project and severely restrict the Chapel Project is great. *Id.*, ¶¶ 101-39. As previously discussed in Section II, the Township has imposed multiple significant conditions on the Church's construction of a chapel on its own grounds for funeral services and has limited other fundamental faith-based activities, such as ringing a bell and honoring the dead. *See* Section II *supra*.

Weighing these harms against one another, the potential harm to the Church resulting from the Township's application of the zoning ordinances is significantly greater than any potential harm to the Township with the preliminary injunction in place.

## IV. Issuing the Preliminary Injunction is in the Public Interest

Issuing the Church's requested preliminary injunction is within the public interest and protects the public interest. The Third Circuit has previously stated that "[t]here is a strong public interest in protecting the free exercise of religion [when] this protection derives from a legislative enactment." *Chosen 300 Ministries, Inc. v. City of Phila.*, No.123159, 2012 WL 3235317, at *25 (E.D. Pa. Aug. 9, 2012) (citing *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft,* 389 F.3d 973, 1010 (10th Cir. 2004), *aff'd*, 546 U.S. 418 (2006)). The prevention of constitutional violations always serves the public interest. *Swartwelder v. McNeilly*, 297 F.3d 228, 242 (3d Cir. 2002).

Furthermore, the Church has already demonstrated a likelihood of success on the merits and an irreparable injury resulting from the Township. Third Circuit case law states that "if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AT&T v. Winback & Conserve Program,* 42 F.3d 1421, 1427 n. 8 (3d Cir. 1994). Because the Church has demonstrated a likelihood of success on the merits and an irreparable injury, and shown that the public interest is always served by the promotion of free exercise of religion, issuance of the requested preliminary injunction is in the public interest. Because the preliminary injunction protects the

public interest and will cause no harm to Defendants during the pendency of this preliminary injunction, the Church asks the Court to waive bond.

## CONCLUSION

The Court should grant the Church's Motion and issue a preliminary injunction enjoining Defendants from (a) enforcing the Township's zoning ordinances to preclude the existence and operation of churches as a matter of matter of right in violation of RLUIPA's equal terms provision and the Free Exercise Clause; (b) enforcing the Township's June 10, 2025 "approval" letter to the Church; and (c) any other infringement of the Church's protected religious exercise under RLUIPA or the Free Exercise Clause through the Township's enforcement of its zoning ordinances, including the Church's construction of the Shrine Project, Chapel Project, or any project on the Church's Property that satisfies RLUIPA's standards.

Dated: January 7, 2026.

Respectfully submitted,

DAVID J. HACKER*
JEREMIAH G. DYS*
RYAN GARDNER*
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
(972) 941-4444
DHacker@firstliberty.org
JDys@firstliberty.org
RGardner@firstliberty.org

MADISON M. KRAUSE
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave. NW
Suite 1410
Washington, DC 20004
(972) 941-4444
MadisonKrause@firstliberty.org

*/s/ Randall L. Wenger*
RANDALL L. WENGER
JEREMY SAMEK
INDEPENDENCE LAW CENTER
23 N. Front St.
Harrisburg, PA 17101
(717) 657-4990
rwenger@indlawcenter.org
jsamek@indlawcenter.org

JOSHUA D. DAVEY*
*Counsel of Record*
TROUTMAN PEPPER LOCKE LLP
301 S. College St., 34th Floor
Charlotte, NC 28202
(704) 916-1503
joshua.davey@troutman.com

M. TAYLOR LEVESQUE*
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8397
taylor.levesque@troutman.com

DYLAN J. DEWITT*
NICK GOUVERNEUR*
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
(312) 759-1602 (DD)
(312) 759-3655 (NG)
dylan.dewitt@troutman.com
nick.gouverneur@troutman.com

BRADLEY A. SMUTEK*
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4002
brad.smutek@troutman.com

*Attorneys for Holy Trinity Ukrainian Catholic Church*

**pro hac vice* application forthcoming

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Memorandum of Law will be served on Defendants Collier Township, Gabe Benvenuti, Wayne Chiurazzi, Tim Downey, Jr., Julie Murphy, Kari Suter, Dawnlee Vaughn, and Mary Ann Cupples-Wisniowski via personal service or other means permitted by the Federal Rules of Civil Procedure and Local Rules.

*/s/ Randall L. Wenger*
RANDALL L. WENGER

*Attorney for Holy Trinity Ukrainian Catholic Church*