IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HOLY TRINITY UKRAINIAN CATHOLIC
CHURCH,

                Plaintiff,

      v.

COLLIER TOWNSHIP, GABE
BENVENUTI, WAYNE CHIURAZZI,
TIM DOWNEY, JR., JULIE MURPHY,
KARI SUTER, DAWNLEE VAUGHN,
MARY ANN CUPPLES-WISNIOWSKI,

                Defendants.

CIVIL ACTION NO. 2:26-CV-00024-CCW

The Hon. Christy Criswell Wiegand

*Electronically Filed*

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO FED.R.CIV.P. 12(b)(6)**

Defendants, Collier Township, Gabe Benvenuti, Wayne Chiurazzi, Tim Downey, Jr., Julie

Murphy, Kari Suter, Dawnlee Vaughn, Mary Ann Cupples-Wisniowski, through their undersigned

counsel, file the following Brief in Support of their Motion to Dismiss Plaintiff's Complaint.

## I.    INTRODUCTION

Plaintiff brings this action relative to two applications for use of property it owns in Collier

Township. Plaintiff is a religious organization. Defendant Collier Township denied Plaintiff's

December 2023 Application to rezone a portion of its property and amend the zoning code to add

a "Planned Cultural Center," and approved Plaintiff's February 2025 Conditional Use Application

with eight (8) conditions. Plaintiff alleges that the denial of the zoning application and conditions

placed upon the conditional use approval violate its rights under the Religious Land Use and

Institutionalized Persons Act ("RLUIPA") and the First Amendment of the United States

Constitution. Plaintiff brings four Counts: Violation of RLUIPA – Substantial Burden on Religious

Exercise by a Land Use Regulation that Does Not Further a Compelling Government Interest in

the Least Restrictive Means (Count I);Violation of the RLUIPA- Treatment of a Religious Assembly or Institution on Less Than Equal Terms (Count II); Violation of the First Amendment Free Exercise Clause – Substantial burden on Free Exercise (Count III); and Violation of the First Amendment Establishment Clause (Count IV). For the reasons set forth below, Defendants respectfully request that this Honorable Court dismiss Plaintiff's Complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff owns two lots located at 130 Baldwin Road in Collier Township. The southern portion of Plaintiff's property is within the Township's Rural Residential District ("R-1 District") and contains the existing mausoleum and cemetery and the northern portion of the property is within the Planned Economic Development District ("PEDD"). Complaint, ¶¶ 34-36 (ECF 1). The property has been used as a cemetery and mausoleum for the Plaintiff. Cmpl., Preliminary Statement, p. 1. Defendants have not taken any action that interfered with the Plaintiff's current use of the property.

### A.  2023 Application to Amend Zoning Code and Rezone Property

On December 22, 2023, Victor-Wetzel Associates, on behalf of Plaintiff, submitted an application requesting an amendment to the Collier Township Zoning Ordinance and Map to re-classify 9.4 acres of its 20 acres in R-1 from R-1 to PEDD, and to amend the Township's Zoning Ordinance by adding a "Planned Cultural Center" as a conditional use in the PEDD. Cmpl., ¶¶ 81 - 84; s*ee* Dec. 22, 2023 Zoning Amendment Application, attached as Exhibit A.

Plaintiff's proposal included a large complex with a building having spires to exceed 250 feet, a museum crypt, a sanctuary, a 300-car parking garage, a gift shop, banquet hall, and retreat center. Cmpl., ¶ 82; Dec. 22, 2023 Zoning Amendment Application, Ex. A. The proposed

amendment to the Ordinance would include additional permitted uses that align with the components of the proposal.

Neither of Plaintiff's proposals involved an application to use property as a church. Churches are permitted in R-1 districts as conditional principal uses, along with several secular uses, including bed-and-breakfasts, firehouses, golf courses, and public buildings. Collier Twp. Ord. § 27-502.2(A).[1] Like churches, golf courses and bed-and-breakfasts are not uses of right in any district within the Township.

On February 6, 2024, Allegheny County sent to Collier Township its review of the proposed plan. Cmpl., ¶ 88; s*ee* Feb. 2, 2024 Letter, attached as Exhibit B. Within that letter, the County raised concerns about adequate infrastructure for such a property, the height of the proposed structure, and the potential pressure on police and emergency services during large events. *Id*. The Collier Township Planning Commission held public meetings on March 12, 2024, and May 14, 2024, wherein Plaintiff was given the opportunity to present on the proposal and field questions from the Planning Commission and the public. Cmpl., ¶¶ 89, 92; s*ee* March 2024 and May 2024 Planning Commission Meeting Minutes, attached as Exhibit C.

On September 9, 2024, the Township Board of Commissioner held a public meeting to again allow Plaintiff to present on the proposal and again field questions from the Commissioners and members of the public. Cmpl., ¶ 95; s*ee* Transcript of September 9, 2024 Meeting, attached as Exhibit D. Plaintiff made a presentation on the breadth of the project. *See* Meeting PowerPoint Pages, attached as Exhibit E. One resident also submitted two slides highlighting concerns about the use of Ridge Road from either direction to build this center and the difficulty in potentially expanding the road. *See* Ex. E at pp. 4-5. The Board of Commissioners denied the application to

---

[1] Collier Townships Ordinances may be found at https://ecode360.com/CO2581, last accessed on January 23, 2026.

change the zoning amendment. Cmpl., ¶ 96. Plaintiff did not appeal this denial or elect to proceed with any available remedies.

### B. 2025 Conditional Use Application

On or about February 25, 2025, Plaintiff submitted a Conditional Use Application seeking to expand the existing cemetery with a new entrance and build a new combined chapel plus mausoleum on the portion of the lot that is within Township's PEDD. Cmpl., ¶ 98: *see* Exhibit F at R004–R008.[2] A cemetery is a permitted conditional use within the PEDD District. Collier Twp. Ordinance 27-1602.2(a). Churches and cemeteries are permitted conditional uses in an R-1 district. Collier Twp. Ordinance 27-502.2(A).

Plaintiff's Conditional Use Application was discussed at the March 11, 2025 Meeting of the Collier Township Planning Commission. Cmpl., ¶ 99; s*ee* Ex. F at R009–R022. The application was discussed again at the April 8, 2025 Planning Commission Meeting. Cmpl., ¶ 99; *see* Ex. F at R024 - R035.

The Township held a public hearing on the Conditional Use Application on April 14, 2025, which continued on May 27, 2025. Cmpl., ¶ 99; s*ee* Ex. F at R036 – R116 and R122 – R174. During these hearings, there were extensive discussions with Plaintiff and its engineer regarding the proposed uses of the property, anticipated traffic increase, and sound levels of the bells and chimes Plaintiff intended to install and use at the property. *See* Ex. F at R036 – R116, R122 – R174. The property is among several residences in the area. *See* Ex. F at R036 – R116, R122 – R174. Residents expressed concerns about the increase in traffic on the road abutting the property and the volume and frequency of the use of the bells. *See* Ex. F at R036 – R116, R122 – R174.

---

[2] Exhibit F is the Consolidated Certification and Record, agreed upon by the Parties, and filed with the Court of Common Pleas of Allegheny County at Docket No. SA-25-000481.

At the April 14, 2025 hearing, Plaintiff admitted that the chapel is an accessory use to the cemetery. *See* Ex. F at R047. Plaintiff also stated that it was willing to accept the restriction of the chapel/mausoleum to 5,000 square feet or less, and that the fire hydrants be installed as required. *See* Ex. F at R051. Plaintiff stated that the bells would chime every day at 3:00 p.m. and for memorial services with the length of the bell chimes not exceeding 3 minutes. *See* Ex. F at R054.

On June 10, 2025, Collier Township approved Plaintiff's Conditional Use Application with eight conditions based upon safety measures and terms that Plaintiff agreed upon during the hearings and meetings. Cmpl., ¶ 101; s*ee* Ex. F at R182.

Plaintiff filed a Petition for Review in the Allegheny County Court of Common Pleas, challenging conditions 1, and 4 through 8 in the approval letter. The appeal included challenges to the conditions based on the RLUIPA and the First Amendment. *See* Notice of Appeal, attached as Exhibit G. Defendant Collier Township filed a Response to Notice of Appeal, which is attached as Exhibit H. The parties agreed to a Consolidated Certification and Record, which is attached as Exhibit F. The parties filed Briefs on November 21, 2025, and November 24, 2025, which are attached as Exhibits I and J.[3] On January 27, 2026, Plaintiff discontinued the statutory appeal (a copy of the Praecipe is attached as Exhibit K).

## III.     STANDARD OF REVIEW

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate only if accepting all factual allegations as true, the complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition to the complaint itself, Courts may consider matters of public record, exhibits attached to the complaint, and undisputedly authentic documents attached to a

---

[3]     Defendants hereby incorporate any argument set forth in its Summary Appeal Brief not fully set forth herein.

motion to dismiss when ruling on same. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)). In other words, a court may consider three types of information: matters of public record including actions of government agencies, matters referenced and incorporated in the plaintiff's complaint, and undisputed matters essential to a plaintiff's claim that are attached to a defendant's motion. *Stewart v. Keystone Real Est. Grp., LP*, No. 4:14-CV-1050, 2015 WL 7016534, at *3 (M.D. Pa. Nov. 12, 2015).

## IV.     ARGUMENT

Through its 58-page Complaint, Plaintiff makes sweeping allegations that the Defendants' denial of its application for zoning changes and amendments and the conditions placed upon its scaled down application violates its rights under the RLUIPA and the First Amendment. However, Plaintiff fails to allege how its rights are violated specifically other than just simply not being permitted to do what it wants with the property because it is a religious institution. Without a religious practice based upon a sincerely held religious belief being interfered with or prohibited, Plaintiff fails to allege a cause of action that can survive a Motion to Dismiss for the reasons more fully explained below.

### a.   Plaintiff's claims are not ripe because it has failed to utilize local and state procedures designed to resolve land disputes.

Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149 (1967); *accord*, *Ohio Forestry Assn., Inc. v. Sierra Club,* 523 U.S. 726, 732–733 (1998). The ripeness doctrine is "drawn both from Article III

limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18 (1993) (citations omitted). Even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion. *Ibid.* (*citing Reg'l Rail Reorganization Act Cases,* 419 U.S. 102, 138 (1974)). These principles typically apply even when a land use dispute implicates constitutional concerns or RLUIPA. *Congregation Anshei Roosevelt v. Planning & Zoning Bd. of Borough of Roosevelt*, 338 F. App'x 214, 217-18 (3d Cir. July 22, 2009) (*discussing Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347-48 (2d Cir. 2005)). Determining whether administrative action is ripe for judicial review requires an evaluation of: (1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration. *Abbott Laboratories,* at 149, 87 S.Ct. 1507.

In *Holland Transport, Inc. v. Upper Chichester Township.,* 75 F. App'x 876 (3d Cir. 2003)*,* plaintiffs appealed the District Court's grant of summary judgment holding that: (1) the zoning hearing board's decision regarding an application for a zoning use permit for a mulch business was not "final," and thus applicant's challenge to the zoning decision was not ripe for review; and (2) the *Rooker-Feldman* doctrine prevented the federal court from exercising jurisdiction over the action, as granting the applicant the relief sought would necessarily entail setting aside judgment of a state court which instructed the applicant to file a land use development plan. 75 F. App'x at 876. The Third Circuit reasoned that ripeness in this context is governed by *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985), which stands for the proposition that in land use cases and challenges to a zoning decision, a claim will not be ripe until the plaintiff has given the local municipality the opportunity to issue a final decision on the application of its zoning ordinance to the property in question. *Id.* at 186. The Third

Circuit has continued to hold that the municipality must make a final decision for land use claims to be ripe. *See River Valley Heights Corp. v. Twp. of West Amwell, No. 21-2042,* 2023 WL 1433634, *2 (3d Cir. Feb. 1, 2023) (plaintiff's claims that the township violated the Fifth Amendment Takings Clause were not ripe because the township had not made a final decision regarding the land at issue); *New Jersey Chinese Cmty. Ctr. v. Twp. of Warren,* 712 F. App'x 196, 199 (3d Cir. 2017) (plaintiffs' failure to appeal the denial of the certificate of occupancy to the zoning board rendered their claims unripe); *Cowell v. Palmer Twp.,* 263 F.3d 286 (3d Cir. 2001) (plaintiff's challenge to zoning changes proscribing their intended commercial use of the property was not ripe because they failed to use procedures for just compensation before filing suit in federal court).

In *Congregation Anshei Roosevelt*, the Third Circuit affirmed the district court's dismissal of a RLUIPA action on ripeness grounds. *Congregation Anshei Roosevelt*, 338 F. App'x at 214. In that case, the synagogue housing the Congregation was constructed before the Borough had zoning regulations and later became part of an R-40 zone in which houses of worship are permitted as conditional uses. *Id*. at 215. The Congregation entered into an agreement with the Yeshiva to provide Rabbinical services while "the Congregation would allow the Yeshiva to conduct study and worship activities at the synagogue." After a neighbor complained that the property was being used as a private school in violation of the ordinance, the zoning officer determined that the use was comprehended within the existing synagogue use and could continue. *Id*. A citizen group appealed, and the Planning and Zoning Board held hearings. An expert on Jewish religious practices testified that a Yeshiva is part of a synagogue. *Id*. at 215-16. "Objecting neighbors testified that there were about 34 students" and that "the students congregate on the property and

street in the evenings, and there are numerous vehicles traveling to and from the synagogue on a daily basis." *Id*. at 216.

The Board overruled the zoning officer's decision. While it accepted the expert's testimony that a Yeshiva can be a synagogue, the Board concluded: "The argument that the Yeshiva is a function of a Jewish house of worship may be accurate. The problem is that from a land use perspective, the Yeshiva has resulted in a significant increase in the intensity of the use. A variance is necessary since the Yeshiva is an expansion of an already nonconforming use." *Id*.

On appeal, the Third Circuit disagreed with the Congregation's argument that the Board had determined the Yeshiva was not a permitted use. Instead, "the Board's resolution speaks only to its determination that the Yeshiva represents an intensification of use requiring a variance." *Id*. at 217. As to the RLUIPA claim, the Court emphasized that the record was not adequately developed, and they do not know whether the Board would "decide to allow the Yeshiva to operate fully, it may place some restrictions, or it may deny any operation of the Yeshiva on the property." *Id*. Critically, a final determination and fully developed record would allow the court to determine "the extent, if any, of the Congregation's alleged RLUIPA injury," and to otherwise address the merits under RLUIPA. *Id*. (*citing Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 616 (6th Cir. 2008) (finding RLUIPA claim not ripe because record was devoid of efforts by the church to complete the factual record, explain its position to the commission, or appeal to the board)).

In this matter, the Board of Commissioners denied Plaintiff's application to rezone a portion of its R-1 property and to amend the zoning ordinance by adding a "Planned Cultural Center" in the PEDD. Plaintiff did not seek further review and did not appeal to the Zoning Hearing Board or any other tribunal. The Pennsylvania Municipalities Planning Code contains a comprehensive statutory system for Land Use Appeals. 53 P.S. § 11001-A, *et seq.* Conversely,

Plaintiff did appeal the June 10, 2025 Conditional Use Approval with conditions to the Allegheny County Court of Common Pleas. Plaintiff then voluntarily chose to discontinue the statutory appeal before a ruling was issued by Judge McGinley. See Ex. K. Accordingly, because Plaintiff did not utilize the available local and state court procedures for land use appeals, which would have provided a developed record and may have avoided any need for this Court's involvement, the Complaint should be dismissed.

### b. Plaintiff fails to state a claim that Defendant Collier Township's Zoning Ordinance is Invalid on its Face.

Plaintiff asserts that Collier Township's Zoning Ordinance is facially invalid because Plaintiff cannot build a church in any zone in the Township as a matter of right. Aside from the fact that Plaintiff has not been prevented from building a place of worship in Collier Township, there is no statute, regulation, case law, or otherwise, that requires a municipality to allow a religious organization to build a church as a matter of right. Rather, the Courts have routinely held that municipalities have the right to manage zoning ordinances in compliance with applicable rules. "Though every citizen has a fundamental right to exercising their religion freely without burdens, the Constitution grants municipalities broad authority to regulate zoning." *Anash, Inc. v. Borough of Kingston*, Civil Action No. 3:24-CV-01955, 2024 WL 5294369, *7 (M.D. Pa. Dec. 19, 2024) (*citing Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 135 (3d Cir. 2002)).

> Indeed, land use law is one of the bastions of local control, largely free of federal intervention. As the Supreme Court stated in *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), "[t]he power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities.... [T]he courts generally have emphasized the breadth of municipal power to control land use...." *See also FERC v. Mississippi*, 456 U.S. 742, 768 n. 30, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982) ("[R]egulation of land use is perhaps the quintessential state activity."); *Izzo v. River Edge*, 843 F.2d 765, 769 (3d Cir.1988) ("Land use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong.").

*Congregation Kol Ami*, 309 F.3d 120, 135-136 (3d Cir. 2002). Discriminatory zoning does not alone render it invalid. *Id*. at 136. Municipalities may, within constitutional limits, zone to preserve a peaceful sanctuary for its citizens. *Id*. (internal citations omitted).  As long as a municipality has a rational basis for distinguishing between uses, and that distinction is related to the municipality's legitimate goals, then federal courts will be reluctant to conclude that the ordinance is improper. *Id*.

"[L]imiting churches to a conditional use in residential districts does not unreasonably limit religious assembly because this restriction does not foreclose a church's right to assemble." *Hope Rising Cmty. Church v. Municipality of Penn Hills*, Civil Action No. 15-1165, 2015 WL 7720380, *4 (W.D. Pa. Oct. 28, 2015), *report and recommendation adopted*, 2015 WL 7721252 (W.D. Pa. Nov. 30, 2015) (*citing Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007)).  Ultimately, the court determined that the Church was unlikely to succeed on such a claim because the zoning ordinance "does not unreasonably limit the Church in violation of RLUIPA by requiring classifying religious structures as a conditional use in residential zones only requiring an application and approval process." *Hope Rising Community Church*, 2015 WL 7720380 at *4. A religious group is not immune from the application of land use laws, and a local government retains its ability to effectuate laws passed to promote the safety and health interests of the municipality and its citizens. *Anash, supra*, 2024 WL 5294369 at *11 (*citing Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 452 (1988)).

In the matter at hand, Plaintiff argues that Collier Township's zoning ordinance is facially invalid because it does not allow for a church to be built as a matter of right. Plaintiff argues that a religious institution must be permitted to engage in any activity that it desires by virtue of its status as a religious institution. Neither the Constitution nor RLUIPA command such an approach. No

court within the Third Circuit nor the Supreme Court has ruled that a municipality must allow a religious institution to build a church as a matter of right. Rather, the Courts have upheld municipalities' rights to enact zoning ordinances and regulate for the health, safety, and welfare of its citizens. Collier Township's zoning ordinances allow for churches to be constructed as a conditional use within several zoning districts. Moreover, Plaintiff has not applied to build a church. Accordingly, Plaintiff has failed to allege a claim that the Zoning Ordinance is invalid on its face, and this claim should be dismissed.

### a. Plaintiff fails to State a Claim for Substantial Burden.

The RLUIPA states that

(1) GENERAL RULE—No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). Congress did not intend to force local governments to give any and all religious entities a free pass to locate wherever any secular institution or assembly is allowed. *Inst. For Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 268 (3d Cir. 2007).

The Free Exercise Clause does not define religious exercise requiring protection to include the use, building, or conversion of real property for the purpose of religious exercise. *Id*. at 273-74 (holding that while we do not question that the act of assembling for prayer or worship is religious in nature, we do not assume, without any allegation in this sense on the part of the plaintiff, that obtaining use of the particular property at issue here has any religious significance.). "[W]hen a religious plaintiff makes a Free Exercise challenge to a zoning regulation, it must

explain in what way the inability to locate in the specific area affects its religious exercise." *Id*. at 274. To support a claim, the plaintiff must articulate why the inability to locate its place of worship on the property or within a specific zoning district "would negatively affect its ability to practice its religion." *Id*. at 275 (*citing Braunfeld v. Brown,* 366 U.S. 599, 606–7 (1961)). In *Lighthouse*, the Third Circuit found that *Lighthouse* failed to place evidence that the inability to locate its premises at the Property or within the specific zoning district at issue would negatively affect its ability to practice its religion. *Id*. at 274.

Plaintiff is unable to meet this standard. Plaintiff conflates the various components of its Cultural Center proposal with a request to use property for a church. Those comparisons are untenable, and the issues relating to the impact of the planned cultural center have never affected the ability of Plaintiff "to practice its religion." The portion of the property where Plaintiff wanted to put the cultural center was zoned residential, where churches are a conditional use. Plaintiff applied to change a portion of the property zoned residential to the PEDD District to allow for its substantially bigger cultural center project. Plaintiff has failed to allege how the current zoning ordinance impedes its ability to practice its religion, especially when the mausoleum and shrine project was approved with minimal conditions that do not prohibit it from using the property for religious practices. Plaintiff fails to allege any actual religious practices that are substantially burdened. It relies purely on sweeping allegations that it is not permitted to do what it wants with the property without consideration of the residential properties surrounding the proposed cultural center. Accordingly, Plaintiff cannot claim that it has been denied the opportunity to open a house of worship on the property because the Planned Cultural Center was not simply a house of worship and the scaled down version of the project submitted in February 2025 was approved with

conditions related to the health, safety, and welfare of surrounding residents. Plaintiff's Substantial

Burden, Free Exercise, and Establishment Clause claims should be dismissed.

### b. Defendant Collier Township's Zoning Ordinance is Applied in a Neutral Manner.

Defendant Collier Township has not treated Plaintiff any differently than similarly situated

non-secular entities or activities. No government shall impose or implement land use regulation in

a manner that treats a religious assembly or institution on less than equal terms with a nonreligious

assembly or institution." 42 U.S.C. § 2000cc(b)(1). A plaintiff putting forward an Equal Terms

Claim under RLUIPA must show the following: "(1) it is a religious assembly or institution, (2)

subject to a land use regulation, which regulation (3) treats the religious assembly on less than

equal terms with a (4) nonreligious assembly or institution (5) that causes no lesser harm to the

interests the regulation seeks to advance." *Hope Rising Cmty. Church*, 2015 WL 7720380 at *4

(*citing Lighthouse Institute for Evangelism, Inc. v. City of Long Branch,* 510 F.3d 253, 266 (3d

Cir. 2007)).

Plaintiff fails to allege any facts from which it may be inferred that the Township's zoning

ordinances or its application of those ordinance treats religious groups on less than equal terms

with secular groups or that Plaintiff's proposal would cause no lesser harm to the interests the

regulations seek to advance. *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510

F.3d 253, 270-71 (3d Cir. 2007). The Third Circuit has held that the substantial burden requirement

does not apply to claims under the Equal Terms provision. *Lighthouse*, 510 F.3d at 262. For an

Equal Terms claim, the plaintiff must establish a secular comparator that is similarly situated as to

the regulatory purpose of the regulation in question – similar to First Amendment Free Exercise

jurisprudence. *Id*. at 264. A regulation does not automatically cease being neutral and generally

applicable simply because it allows certain secular behaviors but not certain religious behaviors. *Id*. at 265.

As stated above, the original Planned Cultural Center was not simply a church or place for religious worship, but a large mixed-use complex on land currently zoned residential. Plaintiff applied to have a portion of the property rezoned and requested a new conditional use for a "Planned Cultural Center" that would include various religious (shrine, worship space) and secular uses (museum, conference space, food service, banquet facilities, retail sales). While positing that non-religious entities have been treated more favorably, the Complaint lacks factual matter from which this conclusion may be inferred. With respect to the 2025 application, the Township approved the project with limited conditions. As to noise concerns, Plaintiff suggests that this cannot be a valid consideration because a highway nearby and the airport is only miles away. But Collier Township has no control over highway noise or aircraft sounds. The Township does, however, have a reasonable basis to enforce its ordinances and consider noise and other impacts, particularly in a residential zone. Plaintiff failed to allege facts supporting its contention that these considerations have been applied unequally to them.

Similarly, Plaintiff identifies two comparator properties. The first is Hill City Church, which they allege is located at 307 Merchant Lane, Carnegie, PA 15106. Cmpl., ¶ 44. First and foremost, 307 Merchant Lane is located within an office building owned by Settlers Cabin Business Center LP. *See* the Allegheny County Property Data Summary, attached as Exhibit L. Hill City Church leased one section of the building for its headquarters. The office building is in the PEDD zone, not a residential zone. Contrary to Plaintiff's assertions, Hill City Church states

that it worships on Sundays at the Carlynton High School[4], which is not located in Collier Township. Accordingly, it is not a comparator.

The second comparator is the Carpenters Complex, which was located entirely within the PEDD. Plaintiff speculates that the Township treated the Carpenters more favorably but fails to set forth factual matter from which this may be reasonably inferred. Notably, the Carpenters' application did not involve a request to rezone property. Nor did it involve a request to amend the zoning ordinance. The property is located in the PEDD, where the Carpenters have had headquarters for decades. The use of that property was expanded to include an office and commercial school, both of which were permitted uses. It never submitted an application similar to Plaintiff's application to rezone property or to create a new conditional use. Moreover, the Carpenters did not propose an event center with uncertain and unpredictable traffic and safety implications. The property does not include a residential zone area, and there are no residences across the street. Unlike Plaintiff's application, the Carpenters' expansion did not implicate the adverse impact considerations that were addressed in the conditional use review process with respect to Plaintiff's cultural center proposal. Nor did it involve the use of bells or any other sounds, much less a need to reasonably place conditions on time and duration. No factual matter in the Complaint says otherwise. The Carpenters' Complex is not "similarly situated in regard to the objectives of the challenged regulation." *Lighthouse*, 510 F.3d at 268.

In summary, the Complaint does not contain facts showing "that it was treated less well than a nonreligious comparator that had an equivalent negative impact on the aims of the land-use regulation." *Id*. at 269. Accordingly, Plaintiff's unequal terms claim should be dismissed.

---

[4] *See* Hill City Church's website: https://www.hillcitypgh.com/joinus

### c. Plaintiff Fails to State a Claim against the Individual Defendants.

Plaintiff names seven Township Commissioners as Defendants in their individual and/or official capacities. Cmpl., ¶¶ 3-9. The Township has five members on its Board. Two named defendants (Chiurazzi and Suter) were on the Board in 2024-2025 and are no longer serving. Both are named in their "individual" capacities. Cmpl., ¶¶ 4, 6. Three named defendants (Benvenuti, Vaughn, and Cupples-Wisnioski) were on the Board in 2024-25 and remain on the Board. Each is named in their "official and individual" capacities. Cmpl., ¶¶ 3, 8, 9. Two defendants (Downey, Jr. and Murphy) were not on the Board in 2024-25 and became Commissioners on January 5, 2026. Cmpl., ¶¶ 5, 7.

Plaintiff does not allege any individual acts giving rise to potential liability by the individual Defendants. A fair reading of the Complaint indicates only that the Board members who served in 2024-25 are named in their individual capacity because of their vote and decisions relating to the 2023 Cultural Center applications and the 2025 condition use application (cemetery) that was approved with conditions.

The individual defendants who served on the Board and voted on Plaintiff's applications are entitled to absolute legislative, quasi-judicial, and qualified immunity. "Absolute legislative immunity attaches to all action taken 'in the sphere of legitimate legislative activity,'" and applies to local legislators. *Bogan v. Scott-Harris*, 523 U.S. 44, 49-54 (1998) (citation omitted). The Third Circuit applies a two-part test: "(1) the action must be 'substantively' legislative, which requires that it involve a policy-making or line-drawing decision; and (2) the action must be "procedurally" legislative, which requires that it be undertaken through established legislative procedures." *Acierno v. Cloutier*, 40 F.3d 597, 610 (3d Cir. 1994). In this matter, the Board's decisions on the application to rezone property, amend the code of ordinances, and to grant a conditional use

application were legislative in substance and procedure. They involved line-drawing and policy and were undertaken in official board meetings through established legislative procedures. *Acierno*, 40 F.3d at 613-14. Accordingly, the individual Defendants are entitled to absolute immunity.

The Third Circuit has also applied quasi-judicial immunity to board members who decide zoning disputes. *Dotzel v. Ashbridge*, 438 F.3d 320 (3d Cir. 2006) (holding that members of board of supervisors are entitled to quasi-judicial immunity "relating to their decision to deny an application for a permit for a conditional use."). The Court discussed several factors, including that (a) "zoning disputes can be among the most fractious issues faced by municipalities," (b) public interest favors that boards considering applications be enable to act independently without fear of litigation; (c) the existence of procedural safeguards, such as hearing procedures, right to counsel, written decisions, and transcripts; (d) the requirement that board members consider in its deliberations the land-use standards set out in the relevant zoning ordinance, and to explain its reasoning in written opinions; (e) the adversarial nature of zoning proceedings, which allows all interested parties to participate; and (f) the availability of appellate review. *Id*. at 325-27. These factors point to the applicability of quasi-judicial immunity in this matter given the nature of the dispute, the need to protect board members, the manner of the proceedings, including procedural safeguards, the competing or adversarial interests of the developer and residents, and the availability of appellate review.

Lastly, qualified immunity applies to any action not covered by the immunities above. The Supreme Court has emphasized the importance of resolving immunity questions at the earliest possible stage in litigation because "[t]he entitlement is an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*quoting Mitchell v. Forsyth*, 472

U.S. 511, 526 (1985)). This immunity shields government officials performing discretionary functions from suit for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

There are no facts to support an inference that the individual Defendants violated a clearly established federal or Constitutional right held by Plaintiff. Rather, the fact-specific concerns that were evaluated in connection with the proposed Cultural Center and the granting of the conditional use application with conditions fall squarely within the discretionary function underlying most land use decisions. Labeling these actions as violative of federal law is no substitute for the type of showing required to demonstrate that a right was violated and clearly established.

Clearly established rights stem from binding precedent or a robust consensus of persuasive authority, framed in terms of the specific facts at issue. *District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 589-90 (2018). A plaintiff may show that settled law governs the facts by identifying a case in which an official acting under similar circumstances was found to have violated the right at issue. But settled law must "squarely govern the specific at issue." *James v. New Jersey State Police*, 957 F.3d 165, 169 (3d Cir. 2020) (*citing Kisela v. Hughes*, 584 U.S. 100, 138 S.Ct. 1148, 1152 (2018)). As suggested by the briefing thus far in this matter, there was no settled, pre-existing law that would have informed a board member that their consideration and decisions in this land-use matter were unlawful. Accordingly, qualified immunity attaches.

For these reasons, the individual defendant who served on the Board in 2024-25 are entitled to immunity and all "individual capacity" claims should be dismissed. This would require the dismissal of Defendants Chiurazzi and Suter who are only sued in their individual capacity.

As to the official capacity claims, Defendants presume that the justification is the request for equitable relief since as to the other relief sought ($1 in nominal damages and attorney fees), official capacity suits are no different than a claim against the Township. Moreover, the new Board members have no personal involvement. See *Lapp v. Nye*, No. 1:23-cv-419, 2024 WL 53017, at *7 (M.D. Pa. Jan. 4, 2024) ("[T]he same personal involvement analysis applied to Lapp's [Section 1983] claim can be applied to her RLUIPA claim."). In any event, the Township is named and responsible for implementing any Order and any of the relief sought in this matter. Accordingly, the remaining individual Defendants who are sued in their official capacity should be dismissed as duplicative and unnecessary.

WHEREFORE, Defendants respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiff's Complaint and enter the proposed Order.

CAMPBELL DURRANT, P.C.

By:   s/Brian P. Gabriel
      Brian P. Gabriel (PA 73132)
      bgabriel@cdblaw.com
      Direct Dial: 412-395-1267

      Allison N. Genard (PA 311253)
      agenard@cdblaw.com
      Direct Dial: 412-395-1279

Dated: February 2, 2026

      535 Smithfield Street, Suite 700
      Pittsburgh, PA  15222
      (412) 395-1280 (Telephone)
      (412) 395-1291 (Facsimile)

      *Counsel for Defendants,*
      *Collier Township, Gabe Benvenuti, Wayne Chiurazzi, Tim Downey, Jr., Julie Murphy, Kari Suter, Dawnlee Vaughn, Mary Ann Cupples-Wisniowski*

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on February 2, 2026, the foregoing **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** was filed with the Clerk of Court using the CM/ECF system, which will provide notification of the same to all counsel of record.

CAMPBELL DURRANT, P.C.

By:   s/Brian P. Gabriel
       Brian P. Gabriel

4907-1541-6201, v. 2