**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| Holy Trinity Ukrainian Catholic Church,<br><br>*Plaintiff*,<br><br>v.<br><br>Collier Township, Gabe Benvenuti, Wayne Chiurazzi, Tim Downey, Jr., Julie Murphy, Kari Suter, Dawnlee Vaughn, Mary Ann Cupples-Wisniowski,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:26-CV-00024-CCW |

**PLAINTIFF HOLY TRINITY UKRAINIAN CATHOLIC CHURCH'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

RLUIPA protects “land use as religious exercise,” *not* land use “as a church.” *Compare* 42 U.S.C. § 2000cc *and* Opp.2, 8. The Township’s[1] Opposition pervasively gets this wrong. The Church’s proposed Shrine Project and Chapel Project sought to use Church land for “religious exercise.” Therefore, RLUIPA applies and requires the Township to meet RLUIPA’s requirements when “impos[ing] and implement[ing]” land use regulations. Because the record demonstrates the Township cannot satisfy RLUIPA’s requirements, injunctive relief is warranted.

## I. The Church is Likely to Succeed on the Merits

Equal Terms Claim: The Township’s zoning scheme forced the Church to apply for a conditional use permit to construct buildings for religious worship, while permitting non-religious uses as a matter of right. For the *facial* violation of the equal-terms claim, the Township cites to a portion of *Hope Rising* addressing an “unreasonable limitations claim,” Opp.8, but that court *actually found a likelihood of success* on an equal-terms claim. *Hope Rising Cmty. Church v. Mun. of Penn Hills*, 2015 WL 7720380, at *5 (W.D. Pa. Oct. 28, 2015), *report and recommendation adopted*, 2015 WL 7721252 (W.D. Pa. Nov. 30, 2015) (city “failed to show how a religious institution would cause greater harm to the [zone] and its objectives than [comparable secular uses].”). The Township has not shown that the Church Projects would have caused “greater harm,” *id.*, to a PEDD zone than the Carpenters Complex or other secular uses allowed as of right. Instead, the Township argues the Church never sought land use “as a church.” The Shrine Project sought approval for uses including religious worship, and the equal-terms provision still applies. The Third Circuit broadly construes a religious “assembly” or “institution” under the equal terms

[1] This Response refers to all Defendants as simply “the Township” and to Plaintiff as “the Church.”

provision, *see Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 284 (3d Cir. 2007), and the Church's Projects fit the Township's own definition of "church."[2]

The *as-applied* violation in the Church's equal-terms claim also succeeds because both the Church Projects and the Carpenters Complex seek to use PEDD-zoned land, but the Township permitted the Carpenters Complex and denied or restricted the Church Projects. *See Hope Rising*, 2015 WL 7720380, at *4 ("There must be some evidence . . . that nonreligious assemblies were permitted but religious assemblies were not."). The Township argues that its conditions were not "restrictions on religious exercise or assembly," Opp.8, but this is not the test and ignores that the Church has explained in detail how the conditions limit its religious exercise, ECF No. 1 at 40–41.

Instead of arguing the Shrine Project would cause a "greater harm to [its] regulatory objectives" than the Carpenters Complex, the Township vaguely claims the Complex has "fundamental differences" with the Shrine Project. The Township cites no legal authority explaining how these differences change the RLUIPA analysis. The regulatory purpose of a PEDD zone is "to promote economic development on large undeveloped tracts in a campus-style atmosphere."[3] Both the Carpenters Complex and the Church's Projects serve this purpose, making them "similarly situated *as to the regulatory purpose*," *Lighthouse,* 510 F.3d at 266 (emphasis in original). The Township tries to differentiate the Carpenters Complex by calling the Shrine Project "an event center with uncertain and unpredictable traffic and safety implications." Opp.9. This

---

[2] "A building or buildings . . . used primarily as a place of worship on a regular basis by a religious denomination, which may also include . . . rooms for religious education, social and recreational activities and administrative offices, rectories, parsonages, convents, preschool programs and elderly or child day-care centers." Twp. of Collier, Pa., Mun. Code § 27-202.
[3] Twp. of Collier, Pa., Mun. Code § 27-1601.

aptly describes the Complex: it frequently hosts large events, including as recently as last month. *See* Mike Gauntner, *Governor Shapiro launches reelection bid*, WFMJ (Jan. 8, 2026).[4]

Substantial Burden Claim: The Township oddly denies imposing *any* burden on the Church's religious exercise, which makes no sense because it was not permitted to use its land as proposed. *See Zubik v. City of Pittsburgh*, 2025 WL 461533, at *17 (W.D. Pa. Feb. 11, 2025). The Township (1) *denied* the Shrine Project and (2) *severely limited* the Chapel Project. To get around these burdens, the Township argues the Church "agreed" to the Township's conditions. Obviously not, as the Church filed this lawsuit instead of building the chapel. And the Church specifically contested the accessory-use designation and never agreed to limit prayers for the dead based on date of death, which offends its faith. ECF No. 55-7 at 135. The Opposition also never identifies a compelling governmental interest. The Township claims it denied the Shrine Project over "reasonable concerns," Opp.8, but RLUIPA requires a "compelling governmental interest," 42 U.S.C. § 2000cc. At best, the Township noted "traffic and infrastructure concerns." Opp.8. The record reflects these "concerns" were general comments *without* requested actions, analysis, or findings, and RLUIPA demands a "a more precise analysis." *Fulton v. City of Philadelphia*, 593 U.S. 522, 541 (2021); *see also Mast v. Fillmore Cnty., Minnesota*, 141 S. Ct. 2430 (2021) (granting, vacating, and remanding a RLUIPA case based on *Fulton*). Neither does the Township use the words "least restrictive means" or explain why its denial of the Shrine Project and arbitrary conditions on the Chapel Project were the least restrictive means to further any claimed interests.

Free Exercise Claim: The Township points out that some secular uses are "not permitted in any district as a matter of right." Opp.8. But *Tandon v. Newsom* held that "[i]t is no answer that

[4] Available at https://www.wfmj.com/story/53365739/governor-shapiro-launching-reelection-bid.

[the Township] treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue." 593 U.S. 61, 62 (2021*)*. It also held that "government regulations are not neutral and generally applicable . . . whenever they treat *any* comparable secular activity more favorably than religious exercise." *Id.* Here, comparable secular uses may operate in the PEDD zone as of right. Mem.17. The Church is thus likely to succeed on this claim because the Township has "imposed [a] burden pursuant to a regulatory scheme that is neither neutral nor generally applicable," and it has made no effort to satisfy strict scrutiny. *Tandon*, 593 U.S. at 62.

Further, the Township's ripeness argument, Opp.7, relies on outdated authority. The Supreme Court recently held that property owners need not comply with administrative procedures before bringing a Takings claim. *Knick v. Twp. of Scott*, 588 U.S. 180 (2019); *see also Pakdel v. City & Cnty. of S.F.*, 594 U.S. 474, 479−81 (2021). The same logic applies to the Church's Free Exercise and RLUIPA claims. Thus, the Church must only show that "there [is] no question . . . about how the regulations at issue apply to the particular land in question," *Pakdel*, 594 U.S. at 478, a standard the Church easily meets. Mem.4−5.

## II. The Church Will Suffer Irreparable Harm Absent A Preliminary Injunction

The Township's argument es the Church has not "suffered the loss" of its First Amendment rights because the Township has not interfered with the Church's religious exercise is belied by the restrictions the Township is imposing on the Church. *Cf.* Opp.10−12. In any event, the existence of a facially unconstitutional law imposes its own irreparable harm. The Township's argument also ignores Supreme Court precedent, *see Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Finally, the Township is wrong that the Church must show the

Township "demonstrated some kind of religious animus," Opp.12 (citing *Anash, Inc. v. Borough of Kingston*, 2024 WL 5294369, at *4 (M.D. Pa. Dec. 19, 2024)). While an equal-protection claim may require a showing of animus, *see, e.g.*, *Small v. Wetzel*, 2014 WL 295714, at *2 (W.D. Pa. Jan. 24, 2014) (subsequent history omitted), *the Church is not asserting an equal-protection claim*. Regardless, the record demonstrates religious animus motivated the Township's actions, at least in part. *See, e.g.*, Dkt.55-7 at 68 ("[W]ho is going to pay for this? Please don't say Jesus.").

## III. A Preliminary Injunction Is In The Public Interest And Will Not Harm The Township

The Township argues that "granting [ ] injunctive relief would cause [it] . . . harm" by diluting its zoning laws. Opp.13−14 (citing *Anash*, 2024 WL 5294369, at *11). But there is no legitimate interest in zoning laws that discriminate against and unlawfully burden religious exercise. Congress passed RLUIPA to curtail such practices. *See* 146 Cong. Rec. at 16,698 (2000) (joint statement of Senators Hatch and Kennedy noting that "[c]hurches ... are frequently discriminated against on the face of zoning codes and also in the highly individualized and discretionary processes of land use regulation"). Further, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Doe v. U.S. Dep't of Homeland Sec.*, 2025 WL 360534, at *10 (W.D. Pa. Jan. 31, 2025).

## IV. Bond Should be Waived

The Third Circuit has held courts may waive bond "when complying with the preliminary injunction 'raises no risk of monetary loss to the defendant.'" *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010). The Township has identified no risk of monetary loss; in fact, the only harm it claims it will suffer (dilution of its zoning laws), Opp.13, is non-monetary. No bond should be required.

This Court should grant the Church's Motion for Preliminary Injunction.

Dated: February 10, 2026.

Respectfully submitted,

*/s/ Joshua S. Davey*
JOSHUA D. DAVEY (*pro hac vice*)
*Counsel of Record*
TROUTMAN PEPPER LOCKE LLP
301 S. College St., 34th Floor
Charlotte, NC 28202
(704) 916-1503
joshua.davey@troutman.com

M. TAYLOR LEVESQUE (*pro hac vice*)
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8397
taylor.levesque@troutman.com

DYLAN J. DEWITT (*pro hac vice*)
NICK GOUVERNEUR (*pro hac vice*)
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
(312) 759-1602 (DD)
(312) 759-3655 (NG)
dylan.dewitt@troutman.com
nick.gouverneur@troutman.com

BRADLEY A. SMUTEK*
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4002
brad.smutek@troutman.com

DAVID J. HACKER (*pro hac vice*)
JEREMIAH G. DYS (*pro hac vice*)
RYAN GARDNER (*pro hac vice*)
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
(972) 941-4444
DHacker@firstliberty.org
JDys@firstliberty.org
RGardner@firstliberty.org

MADISON M. KRAUSE
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave. NW
Suite 1410
Washington, DC 20004
(972) 941-4444
MadisonKrause@firstliberty.org

RANDALL L. WENGER
JEREMY SAMEK
INDEPENDENCE LAW CENTER
23 N. Front St.
Harrisburg, PA 17101
(717) 657-4990
rwenger@indlawcenter.org
jsamek@indlawcenter.org

*Attorneys for Holy Trinity Ukrainian Catholic Church*

**admission to practice in this Court forthcoming*