IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HOLY TRINITY UKRAINIAN CATHOLIC
CHURCH,

          Plaintiff,

      v.

COLLIER TOWNSHIP, *et al.*,

          Defendants.

2:26-CV-00024-CCW

## OPINION AND ORDER

Before the Court is Plaintiff Holy Trinity Ukrainian Catholic Church's Motion for Preliminary Injunction, ECF No. 2.  For the reasons that follow, the Court will DENY the Motion.

## I.    Background

Holy Trinity Ukrainian Catholic Church ("Holy Trinity") is a parish within Collier Township, Pennsylvania ("the Township").  ECF No. 77 ¶ 1.  Holy Trinity owns an approximately 40.6 acre parcel of land ("the Property") within the Township, the southern portion of which is situated within the Township's Rural Residential zoning District ("R-1 District"),[1] and the northern portion of which is within the Planned Economic Development zoning District ("PEDD Zone").[2]  *Id.* ¶ 36.  Holy Trinity has historically operated a cemetery within the R-1 District portion of the Property, and continues to do so.[3]  *Id.* ¶ 2;  Hearing Transcript at 11:19–21.[4]

---

[1] Pursuant to the Township of Collier Code of Ordinances, the purpose of R-1 Districts "is to protect agricultural uses and preserve natural features and resources while encouraging low-density single-family residential development suited to the natural conditions and to provide for accessory uses and compatible public and semipublic uses as conditional uses or uses by special exception."  Township of Collier, Pa., Code ch. 27, § 27-501.

[2] The purpose of the PEDD Zone "is to promote economic development on large undeveloped tracts in a campus-style atmosphere, allowing for a compatible mix of uses that encourages an integrated living and working environment while preserving adequate buffers between dissimilar uses."  Township of Collier, Pa., Code ch. 27, § 27-1601.

[3] A cemetery is a permitted conditional use in the Township's R-1 District.  *See* Transcript at 55:23–25.

[4] Given the time-sensitive nature of Holy Trinity's Motion, and the fact that the official transcript of the March 23, 2026 evidentiary hearing has not been filed on the docket, the Court's citations are to the court reporter's unofficial transcript.

In 2023, Holy Trinity sought to expand its use of the Property. ECF No. 77 ¶ 16. The planned expansion, known as the "Shrine Project," proposed the construction of a "Planned Cultural Center," including a shrine with an estimated capacity of 1,100 people, an associated work space, a museum including a conference space, a 300-car parking garage, a spiritual retreat center with 18 guest rooms, a 225-foot tall bell tower, and accessory and support facilities, such as food service, banquet facilities, and retail sales. *Id.* ¶¶ 16–17; Joint Exhibit 13 at 3–4; Transcript at 50:17–18, 51:3–7; ECF No. 77 ¶¶ 16–17. Holy Trinity estimated the project would cost between $60 and $100 million. *See* Transcript at 45:20–46:1. The shrine was designed "in honor of Mary[,]" to "pray for and memorialize the preborn children of our land." Transcript at 16:3–6; Joint Exhibit 12 (question and answer pamphlet stating that the Shrine Project "has been undertaken with women in mind who have chosen life for their babies, and for women and small children fleeing war[.]").

On or around December 22, 2023, Holy Trinity submitted an application to the Township's Planning Commission, an advisory body to the Township Board of Commissioners, requesting 1) an amendment to the Township Zoning Ordinance and Map to re-classify 9.4 acres of the land from an R-1 District to a PEDD Zone and 2) an amendment to the Zoning Ordinance adding "Planned Cultural Center" as a conditional use in the PEDD Zone. Joint Exhibit 13 at 3–7; ECF No. 77 ¶ 6. The Planning Commission voted to recommend denying the Shrine Project proposal, citing concerns related to insufficient impact analysis and traffic. *See* Joint Exhibit 20 at 3–4. On September 9, 2024, Holy Trinity presented the Shrine Project proposal in a public meeting before the Board of Commissioners. ECF No. 77 ¶¶ 59–61. On or around September 9, 2024, the Board denied the proposal. ECF No. 1 ¶¶ 95–96; Joint Exhibit 24 at 85:9–13.

On or around February 22, 2025, Holy Trinity submitted a conditional use application for the "Chapel Project," a scaled-down version of the Shrine Project. ECF No. 77 ¶ 65. On June 10, 2025, the Planning Commission approved the Chapel Project proposal with certain conditions (e.g., the chapel shall not exceed 5,000 square feet in size). *See* Joint Exhibit 34. Holy Trinity appealed the Township's June 10, 2025 conditional approval of the Chapel Project in the Court of Common Pleas of Allegheny County, Pennsylvania on or around July 9, 2025. *See* ECF No. 55-8. Holy Trinity withdrew the appeal before a ruling was issued. *See* Transcript at 97:20–98:3.

On January 7, 2026, Holy Trinity filed the instant lawsuit, alleging Defendants Collier Township and various other named individuals[5] violated The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, *et seq.* ("RLUIPA"), and the Free Exercise Clause and the Establishment Clause of the United States Constitution through their enforcement of Collier Township's Zoning Ordinance.[6] *See* ECF No. 1. Along with the Complaint, Holy Trinity filed the instant Motion for Preliminary Injunction. ECF No. 2. In the Motion, Holy Trinity requests a preliminary injunction that would order Defendants and "all persons acting in concert with them" to cease: 1) enforcing the Township's zoning ordinances to preclude the existence and operation of churches as a matter of matter of right; 2) enforcing Collier Township's June 10, 2025 "approval" letter to Holy Trinity; and 3) infringing Holy Trinity's religious exercise through enforcing zoning ordinances so as to preclude Holy Trinity's construction of "the Shrine Project, Chapel Project, or any project[.]" *Id.* In response, Defendants argue that Holy Trinity has not met

---

[5] The named Defendants include Board of Commissioners members serving both during the pendency of Holy Trinity's land use applications and at the filing of this lawsuit (Defendants Gabriel Benvenuti, Dawnlee Vaughn, and Mary Ann Cupples-Wisniowski), members of the Board as of the filing of this lawsuit, but not during the pendency of Holy Trinity's applications (Defendants Tim Downey, Jr. and Julie Murphy), and a member of the Board during the pendency of Holy Trinity's applications, but not as of the filing of this lawsuit (Defendant Wayne Chiurazzi). ECF No. 77 ¶¶ 26–27.

[6] The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Holy Trinity raises federal statutory and Constitutional claims.

the standard for a preliminary injunction for multiple reasons, and in particular the higher standard required for a request that seeks mandatory affirmative relief rather than maintenance of the status quo.  ECF No. 55.

The Court authorized the parties to engage in limited, expedited discovery relevant to Holy Trinity's Motion.  ECF No. 60.  On March 23, 2026, the Court held an evidentiary hearing on the Motion.  In pre-hearing submissions, the parties stipulated to a number of facts and agreed to the authenticity and admissibility of all exhibits contained in a joint exhibit list.  *See* ECF Nos. 76, 76-1, 77.  At the hearing, Father Jason Charron, a priest and pastor of Holy Trinity, testified for Holy Trinity.  Robert Caun, the Director of Planning, Zoning & Land Development for the Township, testified for Defendants.  *See* Transcript at 8:5–95:1.  Both witnesses testified credibly.  The Court also heard argument from counsel following the hearing.  Holy Trinity's Motion is now ripe for resolution.  ECF Nos. 2-1, 55, 64.

## II.     Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008);  *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (courts should grant preliminary injunctions only in "limited circumstances");  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989).  As the Supreme Court has recognized, the limited purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Starbucks Corp. v. McKinney*, 620 U.S. 339, 346 (2024) (internal citations omitted).  Four factors inform a court's decision as to the issuance of a preliminary injunction:

> (1) The likelihood that the plaintiff will prevail on the merits at final hearing;  (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of;  (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction

> is issued;  and (4) [that] the public interest [weighs in favor of granting the injunction.]
>
> ***
>
> Generally, the moving party must establish the first two factors and only if these "gateway factors" are established does the district court consider the remaining two factors.  The court then determines "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."

*Greater Phila. Chamber of Commerce*, 949 F.3d at 133 (citations omitted));  *see also Sec. & Exch. Comm'n v. Chappell*, 107 F.4th 114, 126 (3d Cir. 2024) (citation omitted);  *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.,* 306 F. App'x 727, 730–31 (3d Cir. 2009);  13 Moore's Federal Practice § 65.22 (2020).  Stated slightly differently, "any one factor may give a district court reason enough to exercise its sound discretion by denying an injunction[,]" and "[w]hen one factor is dispositive, a district court need not consider the others" to deny an injunction.  *Del. State Sportsman's Assoc., Inc. v. Del. Dep't of Safety & Homeland Security*, 108 F.4th 194, 203 (3d Cir. 2024).

To establish a likelihood of success on the merits, the movant must "demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)[.]"  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017);  *see also*, 42 Am. Jur. 2d Injunctions § 18 (2020) (explaining that to obtain a preliminary injunction, the movant must show that it is "reasonably likely" to succeed on the merits).  That is, the moving party "must produce sufficient evidence to satisfy the essential elements of the underlying cause of action."  *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 37 (M.D. Pa. 2025) (citing *Punnett v. Carter*, 621 F.2d 578, 582–83 (3d Cir. 1980)).  And, "'the burdens at the preliminary injunction stage track the burdens at trial[.]'"  *Greater Phila. Chamber of Commerce*, 949 F.3d at 133 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 429 (2006)).

To establish irreparable harm, the movant must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179. To do so, the movant must demonstrate a potential harm that "cannot be redressed by a legal or an equitable remedy following a trial." *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 610 (3d Cir. 2024) (quoting *Instant Air*, 882 F.2d at 801). The risk of irreparable harm cannot be speculative; merely "[e]stablishing a risk of irreparable harm is not enough[,]" rather, the movant must make a "'clear showing of immediate irreparable injury[.]'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Cont'l Grp., Inc. v. Amoco Chems. Corp*, 614 F.2d 351, 359 (3d Cir. 1980)). Thus, "[t]he dramatic and drastic power of injunctive force may be unleased only against conditions generating a presently existing actual threat[,]" and not "simply to eliminate a possibility of a remote future injury, or a future invasion of rights[.]" *Holiday Inns of Am. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969); *Hadeed v. Advanced Vascular Res. of Johnstown, LLC*, No. 3:15-cv-22, 2016 WL 7176658, at *8 (W.D. Pa. Dec. 8, 2016) (Gibson J.).

Finally, "[a] movant has a particularly heavy burden when seeking mandatory injunctive relief, that is, injunctive relief that would alter, rather than preserve, the status quo." *Castillo-Perez v. Lowe*, No. 1:20-CV-02271, 2020 WL 7183579, at *2 (M.D. Pa. Dec. 7, 2020). To obtain a mandatory preliminary injunction, the movant must "show a substantial likelihood of success on the merits and that their 'right to relief is indisputably clear.'" *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020)); *see also Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980) ("[W]hen the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy.").

### III.  Discussion

#### A.  Holy Trinity Has Failed to Show a Substantial Likelihood of Success on the Merits

Holy Trinity seeks a preliminary injunction which, if granted, would require the Township to engage in affirmative conduct—specifically, to approve the request to amend its Zoning Ordinance to enable the Shrine Project to be constructed in the PEDD Zone and R-1 District. *See* Joint Exhibit 13 at 3–7;  Transcript at 127:19–128:8.  Holy Trinity has conceded that a higher standard for awarding preliminary injunctive relief applies in the present case. *See* Transcript at 100:1–6.  Thus, Holy Trinity must show that its right to preliminary injunctive relief is "indisputably clear." *Hope*, 972 F.3d at 320.  Holy Trinity cannot establish that its right to relief on its RLUIPA or Free Exercise Clause claims, which are the only claims providing the basis for the preliminary injunction, is indisputably clear. *Hope*, 972 F.3d at 320;  ECF No. 2.  Because the Court concludes Holy Trinity fails to meet this heavy burden, it must deny the Motion.

Beginning with Holy Trinity's claims under RLUIPA, Holy Trinity alleges that Defendants violated RLUIPA's "equal terms" and "substantial burden" provisions. *See* 42 U.S.C. § 2000cc(b)(1) ("[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution");  42 U.S.C. § 2000cc(a)(1) (prohibiting land use regulations that "impose a substantial burden" on religious exercise of a religious institution unless that regulation is in furtherance of a compelling government interest and the least restricting means of furthering that interest);  ECF No. 2-1 at 5–16.  In support of its claims, Holy Trinity identifies the Township's approval of the nearby Carpenters Complex, located in a PEDD Zone, as evidence of unequal treatment. *Id.* at 8–10.  Similarly, Holy Trinity contends that Defendants violated the Free Exercise clause through

7

the Township's imposition of a regulatory scheme that Holy Trinity argues is neither neutral nor generally applicable. *Id.* at 16–17.

In response, Defendants argue that the Township has broad authority to regulate zoning, that its Zoning Ordinance is facially neutral, and that there is no evidence that ordinances were applied in a discriminatory or unconstitutional manner. ECF No. 55 at 7–8. With respect to Holy Trinity's invocation of the Carpenters Complex, Defendants contend that the Carpenters' application did not include a request to rezone property, or to create a permitted PEDD Zone use for a "Planned Cultural Center." *Id.* at 9. Furthermore, Defendants argue that where Holy Trinity submitted a plan for a worldwide attraction with limited impact analysis, Carpenters' expansion plan did not implicate comparable traffic and safety concerns. *Id.*

The Court concludes that Holy Trinity has not carried its burden to show a substantial likelihood of success on the merits of its RLUIPA or Free Exercise claims. *See Hope*, 972 F.3d at 320. In pursuing the Shrine Project, Holy Trinity seeks to amend the Township Zoning Ordinance to permit Holy Trinity to construct multiple large structures, spanning acres, in an effort to "draw visitors from near and far," all while providing only limited explanation of the Shrine Project's possible impacts. *See* Joint Exhibit 20. The proposed Zoning Ordinance amendments would attach to the land itself, extending beyond its current owners, Holy Trinity. *See* Transcript at 70:2–11 ("This was not an application for a shrine. . . . This was an application to amend an entire zoning district, not just this property."). At this preliminary stage, Holy Trinity has not shown a substantial likelihood that the Township's denial of that proposal constituted unconstitutional or otherwise impermissible conduct. In other words, Holy Trinity has not shown that its right to preliminary injunctive relief is "indisputably clear," *Hope*, 972 F.3d at 320, in that it has not clearly established that Defendants' conduct imposed a substantial burden on its religious exercise, that Holy Trinity

was treated on less than equal terms than a nonreligious assembly, or that the Zoning Ordinance at issue was not neutral or generally applicable. *See* 42 U.S.C. §§ 2000cc, *et seq.* Given that finding, the Court need not consider the likelihood of irreparable harm or the other preliminary injunction factors, though the Court will briefly address them for completeness. *See Castaneira v. Fox*, No. 1:25-CV-00361, 2025 WL 2934037, at *6 (M.D. Pa. Oct. 15, 2025) (Wilson, J.) ("Because the court finds that [the movant] does not have a likelihood of success on the merits of his claims, the court need not analyze the remaining preliminary injunction factors.").

**B.      The Remaining Factors Weigh Against Granting Preliminary Injunction**

Even assuming arguendo that Holy Trinity could meet the likelihood of success on the merits prong, it still would not be entitled to a preliminary injunction. First, Holy Trinity's delay in filing this action undermines Holy Trinity's claims of immediate and irreparable harm. The Board of Commissioners denied Holy Trinity's Shrine Project proposal on or around September 9, 2024. ECF No. 1 ¶¶ 95–96; Joint Exhibit 24 at 85:9–13. After the Board rejected the Shrine Project, Holy Trinity reported that "we regrouped, we prayed, we thought, and we decided that, let's work within . . . what zoning permits[.]" Transcript at 34:4–5. Holy Trinity did not file the instant lawsuit until January 7, 2026, more than a year after the Board rejected the Shrine Project proposal. *See* ECF No. 1. Courts within this Circuit have found that such a delay may defeat a movant's assertion of irreparable harm. *See Pharmacia Corp. v. Alcon Labs, Inc.*, 201 F. Supp. 2d 335, 383-84 (D.N.J. 2002) (a one-year delay "knock[ed] the bottom out of any claim of immediate and irreparable harm"); *Skehan v. Bd. of Tr. of Bloomsburg State Coll.*, 353 F. Supp. 542, 543 (M.D. Pa. 1973) ("[A] long delay in seeking relief indicates that speedy action is not required."). Holy Trinity's delay in bringing suit in this Court, coupled with its abandonment of

9

its state court appeal, *see* Transcript at 97:20–98:3, compromises its claims of immediate and irreparable harm.

The final two preliminary injunction factors, the balance of the parties' relative harms and the public interest, also weigh against the requested relief. Where, as here, the government is the opposing party, those factors merge. *See West v. Pennsylvania Dep't of State*, 753 F. Supp. 3d 424, 429 (W.D. Pa. 2024), *dismissed*, No. 24-2913, 2024 WL 5509493 (3d Cir. Nov. 19, 2024) (stating harm to the opposing party and public interest "merge when the Government is the opposing party.") (quoting *Del. State Sportmen's Association*, 108 F. 4th at 205). "Federal courts sitting in judgment of a local municipality's legislative acts owe the municipality a degree of deference in its determination of local needs and preferences." *Deraffele v. City of Williamsport*, No. 4:14-CV-01849, 2015 WL 5781409, at *15 (M.D. Pa. Aug. 19, 2015) (citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469 (1981)). Generally speaking, enforcement of local ordinances regulating land use promotes the public interest. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981) ("The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities."); *King v. Twp. of E. Lampeter*, 17 F. Supp. 2d 394, 420 (E.D. Pa. 1998), *aff'd*, 182 F.3d 903 (3d Cir. 1999) ("Local ordinances regulating land development and use are reasonable attempts under the police power to safeguard the health, safety and general welfare of the general public[.]"); *Jones v. Twp.*, No. CV 15-5594, 2016 WL 1625552, at *3 (E.D. Pa. Apr. 21, 2016) ("[T]he state has a legitimate interest in enforcing its local ordinances."). The Third Circuit has described land use law as "one of the bastions of local control, largely free of federal intervention." *Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 135 (3d Cir. 2002). The requested injunction would prevent the Township from carrying out its enacted

10

Zoning Ordinance before the Court has finally resolved the parties' dispute. Accordingly, the Court concludes that the balance of the parties' relative harms and public interest outweigh the harm alleged by Holy Trinity, particularly in light of its delay in filing this action.

     **C.**      **Holy Trinity's Requested Relief is Unduly Broad and Would Prematurely Decide Issues to be Explored at Trial**

Furthermore, even if Holy Trinity was entitled to a preliminary injunction, which it is not, the Court would still be required to issue an injunction that "state[s] its terms specifically and describe[s] in reasonable detail . . . the act or acts restrained or required." *Hope*, 972 F.3d at 322. The Third Circuit has held that injunctions must provide "explicit notice of precisely what conduct is outlawed[,]" be framed in specific terms, and may not leave the enjoined party to guess at what compliance requires. *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 388–90 (3d Cir. 2021) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). Here, the relief requested by Holy Trinity in its briefing is remarkably broad and amorphous, extending to "all persons acting in concert with" Defendants and functionally seeking a bar on conduct that would prevent Holy Trinity from executing any project. *See* ECF No. 2.

When pressed by the Court at oral argument, Holy Trinity agreed to narrow its requested relief to enjoining the Township only, as opposed to all Defendants, from infringing Holy Trinity's religious exercise through enforcing its Zoning Ordinance so as to preclude Holy Trinity's construction of the Shrine Project in the PEDD Zone or R-1 Districts. *See* Transcript at 123:11–126:12. Thus, pursuant to Holy Trinity's statements at the hearing, the Chapel Project is no longer directly implicated in the request for preliminary injunction. *Id.* However, even this revised requested relief is broad, vague, and likely to lead to immediate disputes between the parties over the Township's compliance. The Court is not satisfied that any order granting the preliminary injunctive relief requested in Holy Trinity's Motion would describe to Defendants, with reasonable

11

details, what actions they are required to take or prohibited from taking. Accordingly, it would not be feasible for the Court to fashion appropriate relief.

Equally if not more importantly, granting the relief requested in Holy Trinity's Motion would undercut the purpose of preliminary injunctive relief. The Third Circuit has recently affirmed that preliminary injunctive relief "is proper only in the rare case when a preliminary injunction is necessary to preserve the effectiveness of the ordinary adjudicatory process." *Del. State Sportmen's Association*, 108 F. 4th at 201 (internal citations omitted). It then highlighted that "the most compelling reason to grant a preliminary injunction is to preserve the Court's power to render a meaningful decision after a trial on the merits." *Id.* (internal citations omitted). Here, granting a preliminary injunction would do just the opposite of those things—it would eliminate the Court's power to render a meaningful decision after a trial on the merits. Specifically, the Court would be directing the Township to approve Holy Trinity's request to amend the Township Zoning Ordinance to enable the Shrine Project to be constructed in the PEDD Zone and R-1 District. Such an order would prematurely decide important issues requiring full litigation.

## IV.     Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Holy Trinity's Motion for Preliminary Injunction, ECF No. 2, is DENIED.

DATED this 8th day of April, 2026.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record